UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-01331-RGK (PJWx) | Date | October 27, 2011 |
|---|---|---|---|
| Title | THEODORE DEAN, et al v. CHINA AGRITECH, INC. et al | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not Present | Not Present | |

**Proceedings:** (IN CHAMBERS) Order Re: Motions to Dismiss (DEs 43, 44, 46, and 47)

## I.   INTRODUCTION

On June 22, 2011, investors Theodore Dean, Slava Vanous, Clair Harpster, Randolph Daniels-Kolin, and Tan Tee Yong ("Plaintiffs") filed an Amended Class Action Complaint ("FAC") against China Agritech, Inc. ("Agritech"); members of the company's executive management team and board of directors ("Individual Defendants");[1] Rodman and Renshaw, LLC ("Rodman"); and Crowe Horwath, LLP ("Crowe") (collectively "Defendants"). Plaintiffs allege claims for violations of (1) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission Rule 10b-5 against Agritech and Individual Defendants; (2) Section 20(a) of the Exchange Act against Individual Defendants; (3) Section 11 of the Securities Act of 1933 ("Securities Act") against all Defendants; and (4) Section 15 of the Securities Act against Individual Defendants.

Presently before the Court are the following motions:

• Agritech's Motion to Dismiss: Agritech seeks dismissal of Plaintiffs' Sections 10b and 11 claims for failure to state a claim. Agritech also seeks dismissal of Plaintiffs' Section 11 claim for lack of subject matter jurisdiction;
• Individual Defendants' Motion to Dismiss: Individual Defendants seek dismissal of Plaintiffs' Sections 10b, 20(a), 11, and 15 claims for failure to state a claim. Individual Defendants also seek dismissal of Plaintiffs' Section 11 claim for lack of subject matter jurisdiction;

---

[1] Although Plaintiffs allege claims against additional individual defendants, the only individual defendants seeking dismissal at this juncture are Yu Chang, Yau-Sing Tang, and Gene Michael Bennett. The use of the term "Individual Defendants" hereinafter refers only to those individual defendants moving for dismissal.

- Rodman's Motion to Dismiss: Rodman seeks dismissal of Plaintiffs' Section 11 claim for lack of subject matter jurisdiction and failure to state a claim; and
- Crowe's Motion to Dismiss: Crowe seeks dismissal of Plaintiffs' Section 11 claim for failure to state a claim.

## II.     FACTUAL BACKGROUND

Agritech is a holding company incorporated in the state of Delaware with its principal place of business in Beijing, China. Agritech manufactures and distributes organic compound fertilizers for agricultural application in China. The company is publicly traded within the United States as a result of a financial technique known as a "reverse merger." In a reverse merger, a private company seeking to trade or sell shares in public equity markets will acquire a publicly traded shell company in order to quickly go public and avoid certain regulatory requirements. Once the reverse merger is complete, management of the former private company generally takes control of the merged company. Agritech completed its merger in 2005 and began publicly offering its stock on the NASDAQ stock exchange.

Individual Defendants are Yu Chang, Yau-Sing Tang, and Gene Michael Bennett, three members of Agritech's executive management team and board of directors.

Rodman is an investment bank that served as underwriter for a secondary public offering of Agritech stock completed on May 4, 2010. Plaintiffs allege that they purchased stock from this secondary public offering of Agritech stock.

Crowe is an accounting firm that served as Agritech's independent auditor. Crowe certified Agritech's financial statements for fiscal years 2008 and 2009.

Plaintiffs are five individual investors who allegedly purchased Agritech common stock between November 12, 2009, and March 11, 2011.

Plaintiffs allege that Agritech materially misstated its net revenue and income for the third quarter 2009 on its Securities and Exchange Commission ("SEC") Form 10-Q filing. Plaintiffs allege that Agritech also materially misstated its net revenue and income for fiscal years 2008 and 2009 in its 2009 SEC Form 10-K filing. Additionally, Plaintiffs allege Defendants concealed certain related-party transactions between an Agritech subsidiary and a third-party supplier owned by Defendant Chang. Finally, Plaintiffs allege that on April 29, 2010, Defendants filed a registration statement and prospectus with the SEC on Form 424B5 in anticipation of its public offering completed on May 4, 2010. This form incorporated the allegedly false financial statements for fiscal years 2008 and 2009.

On February 3, 2011, Lucas McGee Research ("LM Research") published a report contending that Agritech was a fraud based on allegations that the company's factories were either not in operation or producing far less than reported. The report further stated that Agritech had filed financial statements to the SEC for fiscal year 2009 that showed substantially larger net revenue as compared to Agritech's filings to the Chinese State Administration for Industry and Commerce ("SAIC"). Additionally, the report alleged that Agritech's factories were idle during that period. After publication of the report, the value of Agritech stock declined from $10.78 per share on February 2, 2011, to $9.85 per share on February 3, 2011, representing a day-over-day decline of 8.63%. On February 15, 2011, Bronte Capital issued a report containing similar allegations to the LM Research report regarding Agritech's production levels. Agritech's stock value again declined from $9.21 per share on February 4, 2011 to $7.44 per share on February 16, 2011, a decline of

approximately 16%.

As a result of Defendants' actions, Plaintiffs allegedly suffered damages in connection with the purchase of their Agritech stock.

### III.    JUDICIAL STANDARD

Where the face of a complaint fails to allege grounds for subject matter jurisdiction, defendants may make a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Under a facial attack to subject matter jurisdiction, the court accepts the allegations of the complaint as true. *See id.* To satisfy the Article III constitutional standing requirements of a "case or controversy," a plaintiff must show that he or she has suffered an injury in fact that is fairly traceable to the defendant's unlawful conduct. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). When a complaint fails to adequately allege Article III standing, the Article III court lacks subject matter jurisdiction and must dismiss the case. *Id.*

Assuming jurisdiction is proper, a party may also move to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion, a court must accept as true all factual allegations made in the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court must construe those allegations in the light most favorable to plaintiffs. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005). However, the court need not accept conclusory allegations and unwarranted inferences when deciding the motion. *Id.*

### IV.    DISCUSSION

#### A.    Plaintiffs' First Claim for Violation of Section 10(b) and Rule 10b-5

Agritech and Individual Defendants seek dismissal of Plaintiffs' Section 10b and Rule 10b-5 claim on the grounds that Plaintiffs fail to properly allege the elements of the claim.
The elements of a Rule 10b-5 claim are (1) a material misrepresentation or omission (falsity); (2) scienter (a wrongful state of mind); (3) a connection with the sale or purchase of a security; (4) transaction and loss causation; and (5) economic loss. *Daou Sys.*, 411 F.3d at 1014 (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

Securities fraud claims brought under Section 10(b) and Rule 10b-5 must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id.* The Public Securities Litigation Reform Act of 1995 ("PSLRA"), which applies to class action claims, altered Rule 9(b) for falsity and scienter by codifying specific, particularized pleading requirements for these two elements. *Id.*

Agritech and Individual Defendants argue that Plaintiffs do not adequately plead the elements of falsity, scienter, and loss causation. The Court disagrees.

##### 1.    *Falsity*

Under the PSLRA, a well-pled allegation of falsity must identify (1) each false statement alleged to have been misleading; (2) the reasons why those statements are misleading; and (3) if the allegation is made on information and belief, the particular facts that give rise to the belief. *Id.*

Defendants argue that Plaintiffs fail to adequately plead that either Agritech or Individual Defendants made a false statement in the financial statements filed with the SEC.

### a.   *Plaintiffs Adequately Plead Falsity Against Agritech*

Plaintiffs allege that, around the time Agritech filed its 2009 Form 10-Q and Form 10-K filings with the SEC, Agritech filed corresponding quarterly and annual financial reports for fiscal years 2008 and 2009 with Chinese regulators (Pls.' FAC 11 ¶ 47, 13 ¶ 53.) The Chinese filings allegedly represented the company's true financial state for those years. (Pls.' FAC 11 ¶ 48.) When compared to the Chinese filings, the U.S. 10-Q and 10-K filings reveal 2008 and 2009 revenues inflated by approximately 1,444% and 900%, respectively. (Pls.' FAC 13 ¶¶ 55, 57.) According to Plaintiffs, these U.S. filings were false because they materially misstated Agritech's revenue and income for the third quarter 2009 and fiscal years 2008 and 2009. (Pls.' FAC 10 ¶ 44, 12 ¶ 52.) Based on these allegations, the Court finds that Plaintiffs have adequately pleaded a false statement made by Agritech.

### b.   *Plaintiffs Adequately Plead Falsity Against Individual Defendants*

SEC filings containing misrepresentations may be attributed to the corporate officers that sign them. *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061-63 (9th Cir. 2000); *Accord in re Cylink Sec. Litig.*, 178 F. Supp. 2d 106, 1081-82 (N.D.Cal. 2001) (applying the rule in *Howard* to a motion to dismiss). Plaintiffs allege that Chang and Tang signed Agritech's third quarter 2009 Form 10-Q. (Pls.' FAC 10 ¶ 43.) Plaintiffs further allege that Chang, Tang, and Bennett signed Agritech's 2009 Form 10-K. (Pls.' FAC 12 ¶ 51.) Both filings allegedly contained misstated revenue and income figures. These statements sufficiently link the allegations of falsity to the Individual Defendants. Therefore, Plaintiffs have adequately pled this element of the claim as to Individual Defendants.

### 2.   *Scienter*

The PSLRA requires that a securities fraud complaint state particular facts showing that the defendants acted with the required state of mind, or scienter. *Daou Sys.*, 411 F.3d at 1022. Scienter, in this context, is the defendant's intention to deceive, manipulate, or defraud. *Tellabs*, 551 U.S. at 313-14. In the Ninth Circuit, scienter is met when the defendants act intentionally or with reckless disregard in making material false statements. *Daou Sys.*, 411 F.3d at 1022. To plead reckless disregard, Plaintiffs must allege specific facts indicating a level of reckless disregard that strongly suggests actual intent. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (quoting *in re Silicon Valley Graphics Inc., Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999)). The scienter analysis focuses on the contemporaneous state of mind of defendants at the time the false statements were made. *Id.* The scienter of individual defendants can be imputed to their company. *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995).

In determining the sufficiency of a plaintiff's scienter allegation, the court must examine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets the standard." *Tellabs*, 551 U.S. at 322-23. Additionally, the court must also take into account plausible opposing inferences. *Id.* at 323. "A plaintiff . . . must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference." *Id.* at 328. A *strong inference* of scienter is defined as more than merely plausible or reasonable, but cogent and at least as compelling as any opposing inference of non-fraudulent intent. *Id.* at 314.

Here, the following facts suggest a strong inference of scienter. First, based on the LM Research investigation, which took place in early 2011, and corroborated by a later investigation by Plaintiffs' own investigators, Agritech's factories either sat idle with no production or operated substantially below capacity. (Pls.' FAC 21 ¶ 87.) Although these investigation occurred in 2011, the level of reported production was consistent with the numbers reported in the Chinese filings (Pls.' FAC 13-16 ¶¶ 58-66.) Second, Plaintiffs allege that Individual Defendants signed U.S. regulatory filings reporting drastically different income and revenue figures from Agritech's Chinese filings for the corresponding fiscal years. (Pls.' FAC 10-13 ¶¶ 42-57.) Third, Individual Defendants occupied positions of leadership and management over the operations of the company. (Pls.' FAC 5-6 ¶¶ 23-25.) Finally, the FAC raises an inference that Chang, Agritech's CEO, may have been motivated to inflate revenue projections due to his 90% ownership interest in Agritech's third largest supplier, Shenzen Hongchou. Plaintiffs allege that Agritech purchased 12% of its supplies from Shenzhen Hongchou in fiscal year 2008. (Pls.' FAC 17 ¶ 74.) Plaintiffs also allege that, over the same fiscal year, Shenzen Hongchou reported annual revenue of only $4,822.00 to the SAIC. (Pls.' FAC 17 ¶ 75.) These allegations of related party transactions raise an inference that Chang may have been motivated to overstate revenue in order to benefit Shenzen Hongchou. Furthermore, Chang failed to disclose transactions between these related parties in the 2009 10-K filing as required by the SEC, SFAS, and GAAP. (Pls.' FAC 16 ¶ 69-72.) The Court finds that these allegations, taken together, give rise to a strong inference of scienter.

In their motion, Defendants offer opposing inferences. Specifically, Defendants argue that inconsistencies between the Chinese and U.S. filings may be attributable to differences in accounting principles. Defendants also argue that the signing of the U.S. filing by Individual Defendants, alone, does not establish an intent by Defendants to defraud at the time the 10-Q and 10-K forms were filed. These arguments are unpersuasive. Assuming as true the facts alleged in the FAC, the Court does not find it reasonable to infer that such large discrepancies in revenues are attributable only to differences in accounting principles. Regarding Defendants' second argument, as discussed above, the signing of the U.S. filings constitutes only one of the facts contributing to a strong inference of scienter.

Considering all facts alleged, and all plausible opposing inferences, the Court finds the inference of scienter is more compelling than any opposing inference of non-fraudulent intent. Therefore, the Court finds that Plaintiffs have alleged sufficient facts to create a strong inference of scienter.

        3.    *Loss Causation*

To adequately state a Section 10b claim, Plaintiffs must also properly allege loss causation, a causal connection between the alleged fraud and their own securities transactions. *Daou Sys.*, 411 F.3d at 1025. Specifically, a Plaintiff must plead a connection between the defendant's material misrepresentation and the plaintiff's loss. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061-62 (9th Cir. 2008) (quoting *Dura Pharm. Inc., v. Broudo*, 544 U.S. 336, 342 (2005)). A plaintiff need not plead that the misrepresentation was the sole cause of his or her loss, so long as the deceptive acts were a substantial cause. *Daou Sys.*, 411 F.3d at 1025. Federal Rule of Civil Procedure 8(a) dictates the pleading standard of loss causation. *Dura*, 544 U.S. at 346. Therefore, a complaint must provide notice to a defendant of the plausible connection between the defendant's material misrepresentation and the plaintiff's loss. *Metzler*, 540 F.3d at 1062 (quoting *Dura*, 544 U.S. at 342).

According to Plaintiffs, the LM report, published on February 3, 2011, asserted that Agritech filed fraudulent financial statements. (Pls.' FAC 21 ¶ 87.) Plaintiffs allege that, as a result of the LM Report's revelations, the value of Plaintiffs' stock dropped nearly nine percent. (*Id.* at 21-22 ¶ 88.) Plaintiffs allege a similar result following release of the Bronte Capital report. (*Id.* at 22 ¶ 93-94).

These allegations provide a sufficient connection between Defendants' misstatements and Plaintiffs' losses. Defendants' allegedly misstated SEC forms led to Plaintiffs' purchasing Agritech stock at an inflated price. (Pls.' FAC 34 ¶ 131.) Once LM Research and Bronte Capital released their reports into the marketplace, Plaintiffs' Agritech stock allegedly declined in value. Had the alleged misstatements not been made, Plaintiffs may not have purchased Agritech stock in the first place. (Pls.' FAC 34 ¶ 132.)

While the FAC, itself, sufficiently pleads information to show loss causation, Plaintiff Yong's PSLRA Certification, which is attached to the FAC, contradicts those allegations. Specifically, the Certification clearly shows that Yong sold his stock prior to the release of the LM Report, rendering his loss causation allegations implausible. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (noting that loss causation requires plaintiffs to allege facts that support a theory that is facially plausible). As the LM Report represents the corrective disclosure connecting the alleged misstatements to Plaintiffs' losses, Plaintiff Yong cannot plead this element of a Section 10b and Rule 10b-5 claim. Therefore, his claim only must fail.

    4.    *Conclusion*

For the foregoing reasons, the Court finds that all Plaintiffs, except Yong, adequately plead a Section 10b and Rule 10b-5 claim against Agritech and Individual Defendants. Therefore, Defendants Agritech and Individual Defendants' Motions to Dismiss Plaintiffs' First Claim are **DENIED** as to Plaintiffs Vanous, Harpster, Daniels-Kolin and Dean, and **GRANTED** as to Yong.

    **B.**    **Plaintiffs' Second Claim for Violation of Section 20(a)**

Defendants also move to dismiss Plaintiffs' second cause of action against Chang, Tang, and Bennett under Section 20(a) of the Exchange Act.

Section 20(a) creates joint and several liability for certain individuals deemed to be "control persons" who aid and abet violations of Section 10b, absent a finding of good faith or lack of inducement. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003). The elements of a Section 20(a) claim are: (1) a primary violation[2] of federal securities law; and (2) primary control or actual power exercised by the individual over the primary violator. *Id.* "Control persons" direct the management and policies of the company or the employee alleged to have committed the violation, either through ownership of stock, contract, or other means. *Id.* (quoting 17 C.F.R. § 230.405). The control element is not based on fraud and not subject to the particularized pleading requirement of Federal Rule of Civil Procedure 9(b) or the PSLRA. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1201 (C.D. Cal. 2008) (citing *In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, 2008 WL 4369987, at *12 (N.D. Cal. Sept. 24, 2008)); *Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS (SHx), 2008 WL 2676364, at *24 (C.D. Cal. July 1, 2008).

---

[2] For purposes of this Section 20(a) claim, a "primary violation" is a violation of Section 10b.

Plaintiffs allege that Defendant Chang was and is Agritech's Chief Executive Officer, President, Secretary, and Chairman of the Board. (Pls.' FAC 5 ¶ 23.) At the time of the alleged misstatements, Chang owned roughly 40 percent of Agritech's available stock. *Id.* Plaintiffs also allege that Defendant Tang was and is Agritech's Chief Financial Officer and Controller. (Pls.' FAC 6 ¶ 25.) Tang was also a minority stock holder of the company at the time the misstatements were made. *Id.* The FAC gives rise to a reasonable inference that both Chang and Tang were actively involved in the day-to-day operation of the company at the time the alleged misstatements occurred. Finally, Plaintiffs allege that Defendant Bennett was and is a director of Agritech and chair of the company's audit committee. It is a reasonable inference that as chair of the audit committee, Bennett was involved with the creation or approval of the financial statements included in Agritech's SEC 10-Q and 10-K filings. Therefore, Plaintiffs adequately plead that Chang, Tang, and Bennett had control over Agritech for purposes of liability under Section 20(a).

For the foregoing reasons, Individual Defendants' Motion to Dismiss Plaintiffs' Second Claim (Section 20(a)) is **DENIED**. However, because this claim is dependent on the sufficiency of the Section 10b and Rule 10b-5 claim, this claim is **DISMISSED** as to Plaintiff Yong.

### C.   Plaintiffs' Third Claim for Violation of Section 11

Unlike the other claims, which are brought by all named class representatives, only Plaintiff Yong brings a claim under Section 11 of the Securities Act against all Defendants. According to the FAC, Yong brings this claim on behalf of himself and the class.

#### 1.   *Plaintiff Yong Has Article III Standing to Bring the Claim*

As a threshold matter, Defendants assert that this Court does not have subject matter jurisdiction over the claim because Yong does not meet the Article III standing requirements for a "case or controversy," as he fails to plead an injury-in-fact that is traceable to Defendants' conduct. (Agritech Mot. 17-18; Crowe Mot. 7-13.) The Court disagrees.

An injury-in-fact is an invasion of a legally protected interest that is concrete and particularized. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To meet Article III standing requirements, the injury-in-fact must be fairly traceable to the challenged action of the defendant, not the result of an independent action of a third party. *Id.* at 560-61.

Here, Yong alleges that he purchased his Agritech stock pursuant to Agritech's secondary stock offering completed on May 4, 2010. (Pls.' FAC 37 ¶ 146.) The registration and prospectus accompanying the secondary stock offering was allegedly false because it included the false financial statements for fiscal years 2008 and 2009. (Pls.' FAC 37 ¶ 145, 148.) Yong alleges that because of Defendants' misstatements he purchased Agritech stock at an inflated price, which did not reflect the true value of the company. (Pls.' FAC 37-38 ¶¶ 146, 159.) As a result, Yong alleges that he suffered damages in connection with the secondary stock offering. (Pls.' FAC 35 ¶ 134.) Defendants' alleged fraudulent actions to inflate the value of Yong's stock represent an invasion of a legally protected interest, as codified by Section 11 of the Securities Act. This is sufficient to grant Yong standing for an economic injury.

Therefore, Defendants' Rule 12(b)(1) Motion is **DENIED**.

      2.    *Yong's Section 11 Claim Must Fail Due to Negative Causation*

Section 11 provides a private right of action to securities purchasers who rely upon a materially false or misleading securities registration statement or prospectus. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1412 (9th Cir. 1994) (citing 15 U.S.C. § 77k(a)). The elements of a Section 11 claim are 1) the defendants filed a registration statement containing an omission or misrepresentation; and 2) the omission or misrepresentation was material, in that it would have misled a reasonable investor about the nature of his or her investment. *In re Countrywide Sec. Litig.*, 588 F. Supp. 1132, 1162 (C.D. Cal 2008).

Although loss causation is not an element of a Section 11 claim, defendants are nevertheless afforded an affirmative defense to reduce or avoid liability if they can show that, on the face of the complaint, the absence of loss causation (negative causation) is apparent. *Id.* at 1170 (citing 15 U.S.C. § 77k(e)). While the loss causation analysis is fact intensive and often more appropriate at the summary judgment phase, courts in the Ninth Circuit have used Rule 12(b)(6) when the face of the complaint and judicially noticeable facts demonstrate that the plaintiff cannot establish loss causation. *Id.* at 1171.

Defendants argue that based on the face of the FAC, Plaintiffs cannot establish loss causation. The Court agrees.

Plaintiffs allege that the LM Research report detailing Agritech's fraud was not released until February 3, 2011. (Pls.' FAC 21 ¶ 86.) Plaintiffs further allege that the Bronte Capital report containing the same allegations of fraud was not released until February 15, 2011. (Pls.' FAC 22 ¶ 93.) Plaintiffs' private investigator did not visit Agritech's Chinese facilities until June 2011. (Pls.' FAC 14 ¶ 59.) No other allegations of a corrective disclosure released by Agritech or a third party were released prior to these dates. Yong, who brings this claim on behalf of the other Plaintiffs, attached his PSLRA Certification to the FAC. According the Certification, Yong sold his stock at a loss between May 6, 2010, and July 7, 2010, approximately seven months before the LM Research report affected the value of Agritech stock. Therefore, the face of the FAC suggests that Yong's stock sales were not influenced by Defendants' alleged fraudulent conduct. *See, e.g., In re Juniper Networks, Inc., Sec. Litig.*, 264 F.R.D. 584, 594 (N.D. Cal. 2009) (finding illogical loss causation where stock holder sold his shares prior to any curative disclosures were disseminated in the marketplace).

Defendants' Rule 12(b)(6) Motions as to Yong's Third Claim (Section 11) are **GRANTED**.

    **D.**    **Plaintiffs' Fourth Claim for Violation of Section 15**

Section 15 of the Securities Act extends Section 11 liability to any person who controls any person liable as a primary violator under Section 11. *In re Countrywide*, 588 F. Supp. 2d at 1183. To be liable under Section 15, there must be a primary violation of Section 11. *Id.*

As the FAC fails to adequately plead a primary violation of Section 11, Plaintiffs' Section 15 claim must also be dismissed.

Individual Defendants' Rule 12(b)(6) motion as to Plaintiffs' Fourth Claim is **GRANTED**.

## V. **CONCLUSION**

In light of the foregoing, all of Plaintiff Yong's claims are **DISMISSED**.

As to the remaining Plaintiffs, the Court orders the following:

- Defendants Agritech's and Individual Defendants' Rule (12)(b)(6) Motions as to Plaintiffs' First Claim are **DENIED**;
- Individual Defendants' Rule (12)(b)(6) Motion as to Plaintiffs' Second Claim are **DENIED**;
- Defendants' Rule (12)(b)(1) Motions as to Plaintiffs' Third Claim are **DENIED;**
- Defendants' Rule (12)(b)(6) Motions as to Plaintiffs' Third Claim are **GRANTED**; and
- Individual Defendants' (12)(b)(6) motions as to Plaintiffs' Fourth Claim are **GRANTED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | slw |