UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-01331-RGK (PJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | **THEODORE E. DEAN v. CHINA AGRITECH, et al** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order Re: Plaintiff's Motion for Class Certification (DE 94) and Defendant's Motion to Exclude the Expert Declaration of Adam Werner (DE 100)**

**I.     INTRODUCTION**

On February 2, 2011, Theodore Dean ("Dean"), on behalf of himself and all others similarly situated, filed a Complaint against China Agritech, Inc. ("Agritech") and several individual defendants, including members of Agritech's executive management team and board of directors. On June 22, 2011, Dean filed an Amended Complaint, which added Slava Vanous, Randolph Daniels-Kolin, Clair Harpster, and Tan Tee Yong as plaintiffs. It also added several additional individual defendants, Rodman and Renshaw, LLC, and Crowe Horwath, LLP as defendants ("collectively, Defendants"). The Amended Complaint alleges claims for violations of (1) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission Rule 10b-5 against Agritech and all individual defendants; (2) Section 20(a) of the Exchange Act against the individual defendants; (3) Section 11 of the Securities Act of 1933 ("Securities Act") against all defendants; and (4) Section 15 of the Securities Act against the individual defendants. On October 27, 2011, the Court dismissed the case as to all individual defendants.

Presently before the Court is Slava Vanous's, Randolph Daniels-Kolin's, Clair Harpster's (collectively, "Plaintiffs") Motion for Class Certification pursuant to Federal Rule of Civil Procedure ("Rule") 23 and Agritech's Motion to Exclude the Declaration of Plaintiffs' Expert Dr.

Werner.[1] For the following reasons, the Court **DENIES** Agritech's Motion and **DENIES** Plaintiffs' Motion.

## II.    FACTUAL BACKGROUND

Agritech is a holding company incorporated in the state of Delaware with its principal place of business in Beijing, China. Agritech manufactures and distributes organic compound fertilizers for agricultural application in China. The company is publicly traded within the United States as a result of a financial technique known as a "reverse merger." In a reverse merger, a private company seeking to trade or sell shares in public equity markets will acquire a publicly traded shell company in order to quickly go public and avoid certain regulatory requirements. Once the reverse merger is complete, management of the former private company generally takes control of the merged company. Agritech completed its merger in 2005 and began publicly offering its stock on the NASDAQ stock exchange.

Plaintiffs allege that Agritech materially misstated its net revenue and income for the third quarter 2009 on its Securities and Exchange Commission ("SEC") Form 10-Q filing. Plaintiffs allege that Agritech also materially misstated its net revenue and income for fiscal years 2008 and 2009 in its 2009 SEC Form 10-K filing. Plaintiffs also allege that on April 29, 2010, Agritech filed a registration statement and prospectus with the SEC on Form 424B5 in anticipation of its public offering completed on May 4, 2010. This form incorporated the allegedly false financial statements for fiscal years 2008 and 2009.

On February 3, 2011, Lucas McGee Research ("LM Research") published a report contending that Agritech was a fraud based on allegations that the company's factories were either not in operation or producing far less than reported. The report further stated that Agritech had filed financial statements to the SEC for fiscal year 2009 that showed substantially larger net revenue as compared to Agritech's filings to the Chinese State Administration for Industry and Commerce ("SAIC"). Additionally, the report alleged that Agritech's factories were idle during that period. After publication of the report, the value of Agritech stock declined from $10.78 per share on February 2, 2011, to $9.85 per share on February 3, 2011, representing a day-over-day decline of 8.63%. On February 15, 2011, Bronte Capital issued a report containing similar allegations to the LM Research report regarding Agritech's production levels. Agritech's stock value again declined from $9.21 per share on February 4, 2011 to $7.44 per share on February 16, 2011, a decline of approximately 16%.

As a result of these actions, Plaintiffs allegedly suffered damages in connection with the purchase of their Agritech stock.

## III.    JUDICIAL STANDARD

Rule 23 governs class actions. To certify a class action, a Plaintiff must first meet the burden of satsifying each of the four prerequisites set out in Rule 23(a). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *as amended* 273 F.3d 1266 (2001). These prerequisites are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[1] This Motion appears to be brought by individual defendants that were dismissed by Court order on October 27, 2011. However, as the Motion is also brought by Agritech, the Court proceeds as if it was brought solely by Agritech.

(4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition to proving the four prerequisites of Rule 23(a), a plaintiff must establish at least one of the three requirements of Rule 23(b). Rule 23(b) provides that a class action is appropriate where: (1) the prosecution of separate actions would create a risk of (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interest of other class members not parties to those adjudications; (2) the party opposing the class has refused to act on grounds that apply generally to the class; or (3) the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## IV.   DISCUSSION

Defendants move to exclude the expert declaration of Dr. Werner. The Court considers this motion and then turns to Plaintiffs' Motion for Class Certification.

### A.   Dr. Werner's Declaration Should Not Be Excluded

Agritech argues that the Court should exclude the expert declaration of Dr. Werner because it is unreliable. Specifically, Agritech argues that Dr. Werner did not use generally accepted methods in conducting an analysis of the *Cammer* factors, which he used to determine whether Agritech stock was trading on an efficient market. The Court disagrees.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that a district court judge must ensure that any expert scientific testimony is both relevant and reliable. *Id.* at 589. This requires a preliminary assessment, under Federal Rule of Evidence 104(a), as to whether the expert's reasoning and methodology is valid and can properly be applied to the facts of the case. *Id.* at 592-93. To make this determination, a court may consider the following non-exclusive list of factors: (1) whether the theory or method can be or has been tested, (2) whether the theory has been subjected to peer review and publication, (3) the known or potential rate of error of the theory or method, and (4) whether the method has been generally accepted by the community. *Id.* at 593-94. However, the Court may consider other factors and need not consider all the factors listed in *Daubert*. "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho Tire Co v. Carmichael*, 526 U.S. 137, 152 (1999).

Agritech argues that Dr. Werner's analysis of the *Cammer* factors is unreliable. The majority of Agritech's Motion challenges Dr. Werner's analysis of the most important *Cammer*

factor: whether there was a cause-effect relationship between corporate news and the price of Agritech stock. Agritech argues that the analysis is unreliable because Dr. Werner failed to use a generally accepted scientific method in conducting this analysis. To determine whether there was a cause-effect relationship, Dr. Werner conducted an event study. Dr. Feinstein, another of Plaintiff's experts, confirms that "[t]he event study is the paramount tool for testing market efficiency." (Feinstein Decl. ¶ 63 (citing Eugene F. Fama, *Efficient Capital Markets: II, J. Finance*, 1607 (1991)).) Agritech does not set forth any evidence to the contrary. Agritech also attacks the way in which Dr. Werner conducted his event study. Specifically, Agritech takes issue with Dr. Werner's use of subjective criteria in selecting events to study, as well as his use of stock price movement at a statistically insignificant level. Dr. Feinstein, however, confirms that the method used by Dr. Werner to do his event study is the method set forth in the literature. (Feinstein Decl. ¶¶ 67-68.) Additionally, other academics and experts recognize that the selection of events is a subjective task (s*ee, e.g.*, Feinstein Decl. ¶¶ 20, 70-73; Pl.'s Opp. at 10) and that stock price movement is important and a valid way of assessing the existence of a cause-effect relationship, even if the movement is not statistically significant at that level. Even Defendants' expert, Dr. Roper, uses this method in his academic work.

Defendants also argue that Dr. Werner's analysis of other *Cammer* factors is unreliable. However, as with the cause-effect factor, Plaintiffs have shown that Dr. Werner used reliable methods. Specifically, Dr. Werner's analysis of how many analysts were following Agritech's stock is reliable because the definition of analyst that Dr. Werner used is supported by the literature, case law, and other experts' opinions. (Pl.'s Opp. at 19.)

That Defendants do not agree with Dr. Werner's conclusions is not enough to make his declaration unreliable. *Daubert*, 509 U.S. at 594-95. Plaintiffs have shown that, in his analysis, Dr. Werner used generally accepted methods that have been used and tested and have appeared in published journals. Therefore, the Court finds that Dr. Werner's declaration is reliable and **DENIES** Defendants' Motion to exclude it.

## B.   Class Certification

Plaintiffs seek to certify a class on behalf of all persons or entities that purchased or otherwise acquired the publicly traded common stock of Agritech between November 12, 2009 and March 11, 2011. Although Plaintiffs satisfy the prerequisites of Rule 23(a), they are unable to satisfy the requirements of Rule 23(b)(3).

### 1.   The Requirements of Rule 23(a) are Satisfied

Plaintiffs contend that all four requirements of Rule 23(a) are met. The Court agrees.

Generally, courts have held that numerosity is satisfied when the class size exceeds forty members. *E.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654-56 (C.D. Cal. 2000); *In re Cooper Cos. Inc. Secs. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Thus, in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied. *Cooper*, 254 F.R.D. at 634; *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (numerosity not an issue where the class period encompassed the purchasers involved in 120,000 transactions involving 21,000,000 shares). On average, 4.4 million shares of Agritech stock were sold per week during the class period. (Pl.'s Compl. ¶ 122(c).) Therefore, the Court may safely presume that the class is sufficiently numerous to render it impracticable to join all members.

To demonstrate commonality, a plaintiff must prove that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In their Complaint, Plaintiffs allege common questions of law or fact including whether Defendants violated federal securities law by making misleading or false statements to the public about Agritech's business operations and earnings. Therefore, the Court finds that Plaintiffs have satisfied the commonality requirement.

To demonstrate typicality, a plaintiff must show that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation and internal quotations omitted). Here, the action is based on the Defendants' alleged misrepresentations, which harmed not only the representative Plaintiffs but all class members because they purchased stock based on these misrepresentations. Thus, Defendants' conduct and the injury suffered is the same for all class members. Therefore, the Court finds that Plaintiffs have satisfied the typicality requirement.

To satisfy adequacy, the person representing the class must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). Adequacy requires (1) that the representative plaintiff does not have a conflict of interest with the proposed class and (2) that the plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020. The Court is unaware of any conflict of interest between Plaintiffs and the proposed class. Additionally, Plaintiffs' counsel is competent to represent the class. The record shows that class counsel has significant experience in litigating complex class actions, especially in the area of securities fraud. (Rosen Decl. Ex. 2.) Accordingly, the Court finds that the adequacy requirement is satisfied.

### 2.   *The Requirements of Rule 23(b) Are Not Satisfied*

In addition to satisfying the prerequisites of Rule 23(a), a plaintiff seeking class certification must also satisfy one of three requirements of Rule 23(b). Plaintiff contends this action meets the requirements of Rule 23(b)(3). For the following reasons, the Court disagrees.

Certification is appropriate under Rule 23 "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. A court may certify a class action under Rule 23(b)(3) if it: (1) finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The predominance requirement asks "whether proposed classes are sufficiently cohesive" by focusing on "the relationship between the common and the individual issues." *In re Wells Fargo Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009). A plaintiff asserting securities fraud under Section 10(b) must prove (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). As discussed above, Defendants' alleged conduct is common to all members of the proposed class. However, the reliance element focuses on the action of each individual plaintiff. Therefore, "the factor that threatens Plaintiffs' ability to survive the predominance

inquiry is reliance." *In re Countrywide Fin. Corp. Secs. Litig.*, 273 F.R.D. 586, 607 (C.D. Cal. 2009).

Courts have recognized that where reliance is an element of the cause of action, individual issues of reliance would predominate over common issues and no class would be able to be certified. *Dura Pharms.*, 544 U.S. at 341. In securities litigation, however, courts will presume reliance as to the class where there has been a fraud on the market. *Basic, Inc. v. Levinson*, 485 U.S. 224, 242-43 (1988). This presumption rests on the theory that "investors presumably rely on the market price, which typically reflects the misrepresentation or omission." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 934 n.12 (9th Cir. 2003). To invoke the fraud-on-the-market presumption of reliance, a plaintiff must establish (1) that the securities were traded in an efficient market and (2) that the defendants' misrepresentations were material and public. *Conn. Retirement Plans & Trust Funds v. Amgen, Inc.*, 660 F.3d 1170, 1172 (9th Cir. 2011). While plaintiffs must establish that the market was efficient and that the misrepresentations were public, materiality need only be plausibly alleged at the class certification stage. *Id.*

The Ninth Circuit uses the *Cammer* factors to determine whether a company's stock was traded on an efficient market. *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (citing to *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989). The *Cammer* factors examine: (1) the average weekly trading volume of the security during the relevant period; (2) the number of securities analysts following the security; (3) the extent to which market makers trade in the security; (4) the company's eligibility to file an SEC Form S3; and (5) the existence of a cause-effect relationship between unexpected corporate news and a change in the price of the security. *Id.* at 1065. The first four factors rely on circumstantial evidence to assess whether the market for the security is conducive to informational efficiency. *Countrywide*, 273 F.R.D. at 613. The fifth factor, instead of "relying on circumstantial evidence that a security's market is *conducive* to efficiency . . . explores whether an important *result* of an efficient market exists." *Id.* at 614. These factors are non-exclusive and meeting all factors is not always necessary. *Id.* at 613 (citing *Unger v. Amedisys Inc.*, 401 F.3d 316, 323 (5th Cir. 2005)). However, several courts have recognized that the fifth factor is the most important. *Id.* at 614.

> a.   *Plaintiffs Satisfy the First, Third, and Fourth* Cammer *factors.*

*Cammer* suggests that "[t]urnover by average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; one percent would justify a substantial presumption." *Cammer*, 711 F. Supp. at 1186. Plaintiffs' expert calculates Agritech's average weekly trading volume to be 29.4 percent. (*Id.*) Even if Dr. Werner failed to filter out noise trading in conducting his analysis, his calculation of nearly twenty-five percent average weekly trading volume is well above the one percent required for a presumption that the market is efficient. Therefore, analysis of the first factor supports a finding that Agritech stock was trading on an efficient market.

"Ten market makers for a security would justify a substantial presumption that the market for the security is an efficient one; five market makers would justify a more modest presumption" of efficiency. *Cammer*, 711 F. Supp. at 1293. Dr. Werner concludes that there were six market makers for Agritech stock. (Werner Decl. ¶ 29.) Further, Dr. Feinstein analyzed market maker data provided by Bloomberg and concluded that at least 290 firms made a market in Agritech common stock, including the six listed by Dr. Werner. (Feinstein Decl. ¶ 38.) Defendants do not dispute this evidence. Therefore, the Court finds that the third factor supports a finding of market efficiency.

A company's ability to file an S-3 Registration Statement with the SEC implies efficiency. Both Dr. Werner and Dr. Feinstein agreed that not only was Agritech able to file an S-3 statement, but that it did file a statement on March 12, 2010. Thus, the fourth factor also supports a finding of efficiency.

### b.   *Plaintiffs Fail to Satisfy the Second and Fifth* Cammer *Factors*

The more securities analysts following and reporting on a company's stock, the greater the likelihood that the stock trading public is relying on the information the company disseminates. *Cammer*, 711 F. Supp. at 1286. Dr. Werner concludes that there were thirteen analysts following Agritech stock and that they collectively issued twenty-eight reports over the class period. (Werner Decl. ¶ 28.) However, Dr. Werner provides no information as to these thirteen analysts. Without such information, the Court cannot make a determination as to whether these individuals were, in fact, analysts. Accordingly, Plaintiffs have failed to meet their burden of proof on this issue and this factor cannot support a finding of market efficiency.

"One of the most convincing ways to demonstrate efficiency [is] to illustrate over time, a cause and effect relationship between company disclosures and resulting movements in stock price." *Cammer*, 711 F. Supp. at 1291. The most common way to test a causal connection is through conducting event studies, which attempt to determine whether new information correlates with price movement. *Countrywide*, 273 F.R.D. at 614. Causation may be inferred if there is a correlation. *Id.* This inference is stronger under certain circumstances, such as "(1) the more statistically significant the correlation; (2) the more objectively defined the event is; (3) the better the study controls for nonfraud factors; and (4) the larger and more representative the sample." *Id.* Experts on both sides agree that the correlation is statistically significant at a 95% confidence level. Even after acknowledging this, Dr. Werner found market efficiency after conducting an event study where he found correlation at a statistically significant level for only one of four events. Dr. Feinstein conducted two event studies, one using the same four events as Dr. Werner and the other using those four events in addition to three others. Dr. Feinstein's studies found that, in the aggregate, there was a statistically significant level of correlation between Agritech's disclosures and movement in the price of its stock. However, it is unclear how meaningful this finding is, as the level of correlation was measured in the aggregate. Even if the Court weighed evidence from Dr. Feinstein equally to that of Dr. Werner, Plaintiffs' own experts differ in their conclusions. This fact, alone, leads the Court to find that Plaintiffs have not satisfied their burden to show conclusive evidence of a causal relationship between Agritech's disclosures and movement in the price of its stock. Therefore, the Court finds that the fifth factor does not support a finding of market efficiency.

In weighing the above factors, the Court finds that Plaintiffs are unable to establish that Agritech stock was traded on an efficient market. Because Plaintiffs cannot establish that there was an efficient market, they are unable to rely on the fraud-on-the-market presumption of reliance and the Court need not consider whether any misrepresentations were public or material. Furthermore, without a presumption of reliance, Plaintiffs are unable to establish that questions of law or fact common to class members predominate over any questions affecting only individual members. Therefore, Plaintiffs are unable to meet the requirements of Rule 23(b)(3).

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Exclude and **DENIES** Plaintiffs' Motion for Class Certification.

**IT IS SO ORDERED.**

_____ : _____

Initials of              slw
Preparer

_____